## WILSON *v.* CROSBY.

1. PRINCIPAL AND AGENT—ADVANCEMENTS—NOVATION.

   A collecting agent who advances money to his principal for the debtor, under such circumstances that the latter becomes liable to the agent, rather than to the principal, cannot retain the amount of such advances from moneys subsequently collected.

2. SAME—APPLICATION OF PAYMENTS—INSTRUCTIONS.

   An instruction, in an action against a collection agent, from which the jury would be justified in charging the defendant with payments admitted to have been made for the purpose of taking up certain notes of the debtor, which had been discounted by the defendant, and the proceeds remitted to the plaintiff, is reversible error.

Error to Kent; Adsit, J. Submitted April 23, 1896. Decided May 26, 1896.

Denis Clancy presented a claim against the estate of Moreau S. Crosby, deceased, for money collected by the latter as claimant's agent. Pending an appeal from the decision of the commissioners disallowing the claim, the claimant died, and the proceeding was revived in the name of his administrator, George S. Wilson. There was a judgment for claimant, and Mary E. Crosby and James M. Crosby, executors of the defendant estate, bring error. Reversed.

*Butterfield & Keeney*, for appellants.

*John S. McDonald* and *Charles A. Watt* (*M. F. Griffin*, of counsel), for appellee.

HOOKER, J. Crosby was a tenant of Clancy, and acted for him in the collection of rents from tenants who occupied a building owned by Clancy, in which Crosby

109 MICH.—29.

had an office.    Among others, a firm—Westlake & Mc-
Intyre—were in the habit of paying rent through Crosby
upon a store which they held under a lease from Clancy
at a rental of $100 per month.    Previous to January 1,
1889, McIntyre went out of the firm, leaving Westlake in
the store, who continued to carry on business in the firm
name until August, when a firm named West & Co. pur-
chased the business and leased the store.    Westlake
appears to have been liable for the rent to some time
in August, and it seems to be conceded that for the latter
part of the time he did not pay the rent, amounting
to $133.34, which claimant claims West assumed and
paid to Crosby, and that he did not pay the same to
Clancy.    The claimant also claims that Crosby wrong-
fully deducted $325 from rents received, upon the repre-
sentation that it was advanced by him, though never
received from Westlake.    Counsel for the defendants say
that Westlake, being unable to pay the rent at times, made
his promissory note, payable to Crosby, who indorsed
and negotiated it at the Old National Bank, thereby ob-
taining the money, for which he gave Clancy credit;
that afterwards he made statements to Clancy, in which
he claimed credit for such advancements to the amount of
$325, and that no objection was made to them until after
Crosby died, when Clancy refused to recognize such
credits, and filed this claim in the Crosby estate, which
was disallowed by commissioners.    Subsequently Clancy
died, and his representative appealed.

Several statements of account in Crosby's writing were
introduced.    One dated April 6, 1889, credited Clancy
with the rent of the Westlake store for the months of
January and February, and other items.    There were
also debits, including a check, to balance the credits.    A
similar account, dated May 13, 1889, contained credits for
the rent for March and April, with similar items of debit,
balancing credits.    On July 3, 1889, Clancy was fur-
nished a statement in which he was credited with rent for

May and June, which also was accompanied with check to balance.   On August 10, 1889, Crosby rendered an account of $104.25 credits to Clancy, in which Clancy was charged with "Rent advanced for June for Westlake, and not paid us, $100; 5 per cent. commission on $85, $4.25,"—which just balanced the credits.   The account was a part of a letter containing the following:

"The balance due us we will charge up in next account. There is due you on the old lease to August 10:

| | |
|---|---|
| Rent for June_____ | $100 00 |
|  "    "   July _____ | 100 00 |
|  "    "   one-third Aug._____ | 33 34 |
| | $233 34 |

"From August 10th to 15th, store was in possession of Hazeltine, Perkins & Co. under attachment, and they are good for the five days' time.   From August 15th, new occupants, J. C. West & Co., are responsible, and will pay.

"We shall collect, if possible, from Westlake, the $233.34 due, but lease, we think, is good as against Westlake & McIntyre for said balance.   However, before asking McIntyre to pay, we would advise waiting a little for other party, as he should pay it.   We had advanced quite a little more to you for Westlake, but succeeded in reducing down to amount as stated, and consider it fortunate we did so.   Think you will agree with us that we did the best thing possible, and surely did as we would with our own property.
                                          "Truly yours,
                                        "J. S. CROSBY & Co."

This letter was followed by a statement of September 25, 1889, as follows:

GRAND RAPIDS, MICH., Sep. 25, 1889.
                 J. S. C. & CO.                              Cr.

| | |
|---|---|
| By balance in full advanced by J. S. C. & Co. for Westlake & McIntyre, not paid ($325 all told)_____ | $225 00 |
| By bal. due J. S. C. & Co. (as per Aug. statement)_____ | 14 25 |
| By paid D. G. Henry & Co. for painting (per bill)_____ | 14 11 |
| By 5 per cent. com. on $226.67_____ | 11 33 |
| | $264 69 |

|  |  | Dr. |  |
|---|---|---|---|
| Aug. | To rent from Hazeltine, Perkins & Co | $16 | 67 |
| " | To rent from Williams | 10 | 00 |
| " | "  "  " J. C. West & Co. | 100 | 00 |
| Sep. | "  "  "  "  "  " | 100 | 00 |
| " | " 5 per cent. com. for Westlake, $225.00 | 11 | 25 |
|  |  | $237 | 92 |
| Bal. due J. S. C. & Co. |  | 26 | 77 |
|  |  | $264 | 69 |
| Bal. in full and due from Westlake & McIntyre |  | { $233<br>{ 225 | 34<br>00 |
|  |  | $458 | 34 |

To Aug. 10, 1889:

RENTS DUE AND UNPAID.

| Westlake & McIntyre | $458 | 34 |
|---|---|---|
| L. Quinsey Williams | 10 | 00 |
|  | $468 | 34 |
| W. & McI., advanced by Crosby, but not paid | $325 | 00 |
| By W. & McI., July rent | 100 | 00 |
| Aug. rent | 33 | 34 |
|  | $458 | 34. |

From this it appears that Crosby was then claiming that there was due to Clancy from Westlake & McIntyre $458.34, made up as follows: $133.34 for July and August, unpaid to Crosby & Co.; $325, advanced by Crosby & Co., which they had not received,—and this $325 they took credit for in the adjustment of the account. The parties continued to do business, and no complaint appears to have been made.

At the time that Westlake sold to West & Co., a portion of the money paid by the latter was used to take up three notes, of the character mentioned, aggregating, with interest, $320.37. It does not appear what months' rent they were given for, but the claimant's contention seems to be that those notes represent the $325 which Crosby took credit for, and retained by his account of September 25, 1889; and that, inasmuch as they were paid by Westlake, thus relieving Crosby from liability upon

his indorsement, he was not entitled to such credit. On the other hand, counsel for defendants say that such notes did not represent such $325, but other advancements, for which Crosby was not reimbursed. Westlake was sworn, but he does not testify positively, or give the amount of advancements made by Crosby, or the items. The record shows that the deal between Westlake and West & Co. depended upon a new lease which West & Co. wanted, but which Clancy was unwilling to give without full payment to date, by Westlake, of rent. He declined to release Westlake & McIntyre from their lease unless they paid up. Westlake testified that Crosby consented to release him, and have Clancy give the new lease, if Westlake would pay $300 on notes already given, or pay up such notes, which, when he did, were found to amount to $320.37. He stated also that he owed a balance, covering the period not covered by the notes up to the time West & Co. took possession,—August 10th. In short, there is room for the argument from his testimony that all he owed upon the lease in addition to the notes was $133.34, as claimant contends. On the other hand, there is clear evidence that these notes were all given previous to June 9th, and some of them were renewals, and the statement of September 25th was over a month after the payment of the notes at the bank by Westlake; and the subsequent dealings permit the inference that Clancy knew and was satisfied with the credit of $325 claimed by Crosby. Hence we think that the case presented a question of fact in relation to this item of $325, which belonged to the jury, and the court did not err in so holding.

As to the item of $133.34, there seems to be no evidence that justifies the claim that Crosby assumed or should pay it. It is clear that it never was paid to Crosby, and the claim has no foundation to rest upon except the fact that it was included in the statement of August 10th as a debit, which was accompanied by a full explanation that it was not paid. Counsel for the claimant ask us to find

that this amount was not included in the verdict, for the reason that the two items, without interest, would fall short of the verdict, while the $325 item, with interest, would approximate it closely. The record shows this to be true, and, as the jury evidently found that the claimant was entitled to a verdict for $325, the verdict was not excessive, as it fell $2 short of the amount of such sum and lawful interest. We think there is force in the suggestion that this item probably did not constitute a part of the verdict, but it was left to the jury, and, in view of the charge, may have been injurious. We do not find it necessary that the case should turn on this question, however.

Several errors are assigned upon the charge. The court left to the jury the question whether Crosby had advanced amounts to Clancy for Westlake under circumstances which made Westlake his debtor, instead of Clancy's, and directed them to find a verdict for the claimant if they found such to be the case. He further said to the jury that, if so, Crosby had no right to reimburse himself for such advancements out of other rents subsequently collected. All of this was proper, and the court was careful to say that this depended upon whether or not Crosby had advanced money under circumstances which made Westlake Crosby's debtor, instead of Clancy's. The next paragraph of the charge was as follows:

"If you find that, when West & Co. bought the Westlake stock, a certain sum was paid upon Westlake's rent, then such payment should be applied upon Clancy's rent, and not upon the indebtedness, if any such existed, due, as agent, Mr. Crosby, from Westlake. That covers it, I believe."

It is beyond controversy that the money was paid upon the notes in question. Claimant's theory was that the fact that such money was applied upon said notes precluded Crosby from recovering back the money advanced for the rent represented by said notes. This was upon the very theory that he had been made whole by the pay-

ment of said notes, or, in other words, by the application of such payment to the indebtedness due from Westlake to him, represented by said notes. But it must be remembered that Crosby did not admit that the $325 which he retained was to reimburse him for the amount of rent represented by the notes, but for other rent advanced by him, and, if the jury so found, they were told that this money so paid must apply upon the rent due Clancy, and not upon Crosby's indebtedness. If it be contended that they should not have so understood it under a literal interpretation of this charge, because the court made such instruction depend upon their ability to find that the money was paid upon *Westlake's rent,* which, technically speaking, would not be so if it were intended to pay such notes, it may be answered that there was no propriety in leaving such question to the jury, for there was no opportunity, under the evidence, to find an intention on the part of any one that the money should be applied upon any claim except the notes in bank. It seems to us that there was no occasion for this instruction, and that, if the jury found that the money retained by Crosby was not covered by the notes, the question of payment had nothing to do with it. It placed the defendants in the position of being held liable for the money received upon said notes, and advanced, because Westlake became indebted to Crosby, and of having the money paid into bank upon the notes applied for the benefit of the claimant upon any other advancement made by Crosby, because the jury were directed to apply it to rent due Clancy, and not to the payment of Westlake's obligation to Crosby. It permitted the payment to do double duty. If the jury found that the rent represented by the notes was the only money advanced, no harm resulted from this instruction; but of this we cannot be sure. Perhaps the court took the view that this must be found the only money advanced; but we have said that, in our opinion, this was a question for the jury.

We therefore feel constrained to hold that the judgment should be reversed, and a new trial directed.  Ordered accordingly.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. LONG, C. J., did not sit.